IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Brian Scheib          :

   Plaintiff          : Civil Case NO. 3:14-CV-617

v.                    :

Haines Equipment, Inc. : (Judge Richard P. Conaboy)

   Defendant          :

**Memorandum**

We consider here Defendant's Motion for Summary Judgment (Doc. 14). That motion has been fully briefed by the parties and the Court has been provided with various deposition excerpts that describe the events that precipitated this lawsuit. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I. Factual Background.** [1]

This case stems from a horrific workplace accident that occurred on April 27, 2012 at Plaintiff Brian Scheib's place of employment, Tallman Family Farms in Lackawanna County, Pennsylvania. On that date, Plaintiff was using a potato seed cutter ("PSC") manufactured by the Defendant, Haines Equipment,

---

[1] The "Factual Background" is derived from Plaintiff's Complaint (Doc. 1), Defendant's Answer (Doc. 5), and the parties' respective versions of the material facts. (Doc. 14-1 and 18). Where dispute exists we resolve all differences in the light most favorable to Plaintiff. *International Raw Materials, Ltd. v. Stauffer Chemical Company*, 898 F.2d 946 (3d. Cir. 1990).

1

Inc. The machine had been manufactured in 1978 and it was approximately 34 years old at the time of Plaintiff's accident.

The accident occurred while Plaintiff was operating the PSC to split and cut potatoes to be used for seed. On the morning of the accident, Plaintiff's work had twice been interrupted when the machine clogged with excess potatoes in the business end of the machine, known to the parties as the "three-way cut".[2] On both of those occasions, Plaintiff stopped the machine, removed the guards that guarded the rollers and chains that convey the potatoes to the "three-way cut", and attempted to clear the clog. There is no dispute that in following this procedure Plaintiff was following general instructions he had received from his employer on how to handle moving machinery. Similarly, there is no dispute that the PSC included written warnings advising that it was dangerous to operate the machine without the guards in place. There is, however, dispute regarding whether the Plaintiff ever received particularized instruction concerning how to remove a clog in the "three-way cut" of the PSC. There is also dispute as to whether Defendant ever supplied an operator's manual for the PSC.

Early in the afternoon of April 27, 2012, the machine clogged for the third time that day. On this occurrence, Plaintiff again

---

[2] The potato seed cutter is an assemblage of several components including a series of rollers, gears and chains that move potatoes from the truck to the "hopper" at the bottom of which are moving blades including the "three-way cut", the site of the repeated clogs on the date of the accident.

2

attempted to clear the clog. This time, he testified, he reasoned that to completely clear the clog he needed to do so by poking it with a stick while the machine was still running. He attempted to do this after removing the guards. While using his right hand to poke at the clog with a stick that had been provided by his employer, Plaintiff's left sleeve became entangled in the rollers that conveyed the potatoes to the site of the clog. The apparatus dragged his left hand into the rollers and the result was the amputation of Plaintiff's left hand.

## II. **Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable

inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas., 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. Celotex Corp. V. Catreet, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. Abramson v. William Patterson College of N.J., 260 F.3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be

weighed, a full trial is usually necessary.

III. **Discussion.**

Defendant's Motion for Summary Judgment is predicated on the doctrine of assumption of risk. Defendant seeks to characterize Plaintiff as a man well-versed in the workings of machines and the engines that power them. For this reason, Defendant claims that Plaintiff knowingly encountered the danger posed by the moving rollers that severed his hand. Thus, Defendant asserts, this voluntary decision to encounter this peril should operate to exonerate it against any liability here.

For his part, Plaintiff does acknowledge that he appreciates the fact that moving machinery poses a potential danger to anyone near it.[3] He claims, however, that while he was aware that the "three-way cut" which was the locus of the clog posed a very real danger to flesh and bone, he did not subjectively appreciate the danger posed by the moving rollers that ultimately maimed his left hand while he was trying to free the clog with his right hand. This assertion carries critical significance.

There is no doubt that Pennsylvania Law, which this Court sitting in diversity must apply, recognizes the vitality of the assumption of risk doctrine. The doctrine of assumption of risk bars recovery when...

---

[3] The Court will observe that most people who reside in the industrialized world appreciate the fact that moving machinery can be dangerous.

5

> the party consciously appreciated the risk that
> attended a <u>certain endeavor</u>, assumed the risk of
> injury by engaging in the endeavor despite the
> appreciation of the risk involved, and that the
> injury sustained was, in fact, the same risk of
> injury that was appreciated and assumed.  The
> appreciation of a <u>general</u> risk is not sufficient to
> prevent a case from going to the jury.  Rather, the
> risk of injury from the transaction that actually
> took place must be so immediately apparent as to be
> equivalent to an appreciation of that risk and a
> relinquishment of the right to complain.

Hadar v. AVCO Corp. 886 A2d. 225, 229 (Pa.Super.2005). Ironically, both parties cite to Hadar as supportive of their respective positions.

   Hadar is instructive and, indeed, pivotal to the Court's decision regarding Defendant's motion.  The fact pattern in Hadar is eerily similar to that in the instant case.  Hadar was also a case featuring a gruesome injury inflicted while operating a piece of agricultural machinery.  The machinery involved in Hadar was a mechanical corn picker which, like the PSC in this case, consisted of rollers which operated at high speed to conduct ears of corn toward "husking rollers" which

6

removed the husks from the corn. Like the Plaintiff in our case, Mr. Hadar detected a jam. Like the Plaintiff in our case, Mr. Hadar elected to allow the machine to run after locating the jam. Like the Plaintiff in our case, Mr. Hadar attempted to clear the jam by using a foreign object (in his case a corn stalk) to attempt to push the jam through the husking rollers. Like the Plaintiff in our case, Mr. Hadar was somewhat familiar with the machine he was operating. Like the Plaintiff in our case, Mr. Hadar suffered a serious injury when the corn stalk he was using as a prod was suddenly seized by the apparatus and his hand was dragged into the whirling rollers. Like the Plaintiff in our case, Mr. Hadar acknowledged that he knew that he had to keep his hand away from the husking rollers that injured him.

The Court of Common Pleas of Westmoreland County granted summary judgment against Mr. Hadar due to its perception that he had voluntarily assumed an obvious risk when he attempted to unclog the corn picker while the machinery was yet running. The Pennsylvania Superior Court reversed and remanded the matter for trial. The Superior Court's decision was premised on the idea that previous Pennsylvania appellate decisions "reflect a reluctance to find assumption of the risk applicable unless it is quite clear that the <u>specific risk</u> that occasioned injury was both fully <u>appreciated</u> and

7

voluntarily accepted." Citing Bullman v. Giuntoli, 761 A2d. 566, 571 (Pa.Super.2000). Considering Hadar's assertion that, while he appreciated the danger of placing his hand near the rollers, he did not appreciate the danger posed by the sudden seizure of the corn stalk, the Superior Court ruled that it was for a jury to determine whether Hadar had a subjective awareness of the specific risk that caused his injury. Stated another way, Mr. Hadar's subjective appreciation was paramount and it did not matter whether the mythical reasonable man would have appreciated the peril that caused his injury. Applying Hadar's principle to this case, we must conclude that, notwithstanding Plaintiff Scheib's appreciation of the general danger posed by moving machinery, the critical question is whether he subjectively recognized the danger of standing in close proximity to the PSC's rollers.

Examining the record that has been presented to this Court, we cannot conclude as a matter of law that Plaintiff Scheib appreciated the danger of his left hand being dragged into the rollers while he was focused on freeing the clog in the "three-way cut" of the PSC with his right hand. The Court finds unpersuasive Defendant's argument that the rollers and "three-way cut" were in such close proximity that Plaintiff had to recognize the possibility that he would be snared by the rollers. Rather, the question of Plaintiff's subjective

8

appreciation of the risk involved in clearing the machine while it was operating will be resolved by a credibility determination, something quintessentially in the province of a jury. Accordingly, the assumption of risk doctrine cannot operate at this stage of this proceeding to mandate judgment for the Defendant. The issue of Plaintiff's subjective appreciation of the risk posed by the PSC's rollers must be evaluated by a jury along with the inevitable determination in every products liability case whether the product was defective in design or mode of manufacture.[4] To make the latter determination the jury may need to consider whether the warnings on the machine were adequate and whether the PSC's design could have been altered to make the accident that occurred less likely or impossible. This, in turn, will involve an evaluation of the competing testimony of the parties' experts and whether a manufacturer is permitted to ignore the possibility that a workman with low safety consciousness would elect to work around exposed, moving machinery. See Schell v. AMF, Inc., 567 F.2d 1259, 1262-63 (3d. Cir. 1977).

---

[4] The Court will observe that even if a jury finds the PSC to be defective for any reason, the doctrine of contributory negligence may operate to reduce or even eliminate Defendant's liability. Bullman, supra, at 569, n.2.

IV. **Conclusion.**

For the previously stated reasons, Defendant's Motion for Summary Judgment (Doc. 14) is denied with respect to Plaintiff's claims of product liability and negligence. Defendant's motion will be granted with regard to Plaintiff's count for breach of warranty for the reasons, uncontested by Plaintiff, advanced in Defendant's Briefs in Support of its Motion (Docs. 15 and 27).

BY THE COURT

/s/ Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated: 9/21/15